UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

D.A.J. XXX-XX-6738                                                    CIVIL ACTION NO. 19-cv-0714

VERSUS                                                                       CHIEF JUDGE HICKS

U S COMMISSIONER OF SOCIAL SECURITY  MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

D.A.J. ("Plaintiff") was born in 1977. He has a tenth-grade education and work experience as a delivery truck driver, dump truck driver, heavy equipment operator, and dishwasher. He stopped working at Santa Maria Produce in December 2016 after he experienced problems walking and required spinal surgery. He has continued to have issues with walking and balancing.

Plaintiff filed an application for disability benefits and supplemental security income. ALJ Charles Lindsay held a hearing and issued a written decision. He found that Plaintiff was not disabled within the meaning of the law. The Appeals Council denied a request for review, which made the ALJ's decision the Commissioner's final agency decision.

Plaintiff then filed this civil action to seek the limited judicial review that is allowed by 42 U.S.C. § 405(g). Plaintiff was represented by counsel at the agency hearing, but he is now self-represented. He filed a letter-brief that did not specify any particular errors; he did attach a letter from a physician that was written after the final agency decision. For the

reasons that follow, it is recommended that the Commissioner's decision be reversed and the claim be remanded to the agency for further proceedings.

**Summary of the ALJ's Decision**

The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. The regulations set forth a five-step sequential analysis, on which the claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. The steps are (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. Salmond v. Berryhill, 892 F.3d 812, 817 (5th Cir. 2018); Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).

The ALJ analyzed the claim pursuant to the five-step analysis. He found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 12, 2017. At step two, he found that Plaintiff suffered from cervical and lumbar myelopathy; status post ACDF C4-5, C5-6; and continued gait problems with poor balance, impairments that are severe within the meaning of the regulations. He found that Plaintiff suffers from diabetes mellitus with gastroparesis, but the impairment was not severe because it is effectively managed with treatment. The ALJ also considered Plaintiff's history of polysubstance abuse and obesity but found that those conditions were not severe

because they did not impair or interfere with Plaintiff's ability to work. At step three, the ALJ found that none of the severe impairments were so limiting as to meet or equal a listed impairment that would require a finding of disability without consideration of age, education, or work experience.

After step three, the ALJ must assess a claimant's residual functional capacity ("RFC"), which is the most the claimant can still do despite his limitations. Kneeland v. Berryhill, 850 F.3d 749, 754 (5th Cir. 2017). The claimant's RFC is used at steps four and five to determine if the claimant can still do his past relevant work or adjust to other jobs.

The ALJ found that Plaintiff had the RFC to perform sedentary work, meaning he could lift and carry up to ten pounds occasionally and lesser amounts frequently, sit for six hours in an eight-hour workday, and stand and work for at least two hours in an eight-hour workday. The ability to perform sedentary work was, however, further restricted by the ability to only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and never work at unprotected heights. Plaintiff can, however, continuously reach, frequently handle, finger, push/pull with both hands, and he can occasionally feel with both hands. He can frequently use foot controls with both legs, and he can occasionally stoop, balance, kneel, crouch, and crawl.

Plaintiff's past relevant work was medium level work, so the ALJ found at step four that Plaintiff's RFC did not permit him to perform the demands of those jobs. Step five asks whether the claimant, considering his age, education, work experience, and RFC, can perform the demands of other jobs that exist in significant numbers in the economy. A vocational expert ("VE") testified that a person with Plaintiff's RFC and other factors could

perform the demands of an envelope addresser, lens inserter, or table worker. The ALJ accepted that testimony and found at step five that Plaintiff was not disabled.

**Relevant Evidence**

### A. Hearing Testimony

A hearing was held in February 2018. Plaintiff was represented at the hearing by attorney Jack Bailey. Mr. Bailey stated at the hearing that Plaintiff suffers from depression, anxiety, and suicidal thoughts, but "the thing that he suffers from would most likely get him a finding of disabled is his myelomalacia … ." Tr. 34-35. (Myelomalacia is a pathological term referring to the softening of the spinal cord.)

Plaintiff testified at the hearing that he went to the hospital in December 2016 because he was having difficulty walking. It was discovered that he had a "bulging disc with some shattered," and he was immediately hospitalized for surgery. Plaintiff testified that, since the surgery, "I didn't get no better. Just the same, like, it just worsened." Plaintiff claimed that he had to use a walker and that he is unable to maintain his balance without it. Tr. 41.

Plaintiff said that he has issues with his stomach. Certain foods will cause his digestive system to "flare up." He stated that this causes him to get dehydrated, and he has to go to the hospital to get an IV. Tr. 56.

Plaintiff's sister, Patricia Jenkins, testified that her brother has expressed thoughts of self-harm due to not being able to work. Tr. 60. She takes her brother to doctor's appointments and to the grocery store. Tr. 61.

VE Ivory Youngblood testified at the hearing. The ALJ asked Mr. Youngblood a series of questions aimed at whether there are any jobs that could be performed by a person of Plaintiff's age, education, and RFC of a limited range of sedentary work. Mr. Youngblood testified that such a person could perform the sedentary jobs of envelope addresser, lens inserter, or table worker. Tr. 64-65. If, however, the person required a walker for ambulation or needed to take additional breaks throughout the day, he would not be able to perform those three jobs. Tr. 66-67. The VE was not asked whether the need for a cane to ambulate would preclude the ability to perform those or other jobs.

### B. Medical Records

Plaintiff presented to the emergency room on December 26, 2016 with complaints of gait abnormality. He had weakness and numbness in both legs. He said he recently got a new pair of boots and first thought they were affecting his gait, but even after he stopped wearing them, he was unable to walk properly and lost his balance. He was not using a walker or cane when he arrived at the hospital. Tr. 292-93. An MRI was performed that showed Plaintiff had cervical myelomalacia. On December 28, 2016, Plaintiff underwent a cervical anterior fusion at C4-5 and C5-6. He was discharged from the hospital on December 31, 2016. Before he was discharged, a physical therapist trained him on the use of a rolling walker and instructed him to use the walker to ambulate. Tr. 302-03, 471.

On January 4, 2017, Plaintiff saw Haley Odie, a physical therapist, for post-surgical therapy. He was using a single-point cane to assist his walking. He reported that he was having pain that was an 8 out of 10. Tr. 561-63. A February 3, 2017 progress note shows that Plaintiff reported that he "has improved a lot over the past weeks since his surgery,"

but he was still using a cane for ambulation. Tr. 573. Plaintiff continued to go to physical therapy through April 11, 2017. It was noted at a number of therapy sessions or follow-up visits that Plaintiff expressed frustration with balance and ability to walk, and he was using a straight cane. See, e.g., Tr. 562, 573, 585, 602, & 617.

Dr. Anil Nanda saw Plaintiff in May 2017 and noted that "[h]e feels he has improved some with strength and gait, however, still not enough to do the job that he does for Santa Maria." Dr. Nanda noted that Plaintiff was still using a cane. Tr. 637.

### C. Dr. John Anigbogu

Dr. John Anigbogu did not treat or examine Plaintiff. He reviewed Plaintiff's medical records and answered a set of interrogatories regarding Plaintiff's condition. Tr. 661. He opined that Plaintiff had cervical and lumbar myelopathy and continued gait problems with poor balance, but he did not meet or equal any listing. Dr. Anigbogu found that Plaintiff would be able to occasionally lift and carry no more than 10 pounds. He also checked a box to indicate that Plaintiff would not require a cane to ambulate, and he referred to a record from Plaintiff's initial December 26, 2016 hospital visit. Tr. 666. He said that Plaintiff would be able to frequently climb stairs and ramps, balance, kneel, crouch, and crawl, and to occasionally stoop. However, Plaintiff would never be able to climb ladders or scaffolds. Tr. 668.

### Standard of Review; Substantial Evidence

This court's review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard. Perez v. Barnhart, 415 F.3d

457, 461 (5th Cir. 2005). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Review of Commissioner's Decision**

Plaintiff's two-page letter-brief states that Plaintiff suffers from "spastics and paresis leaving me with significant gait and balance impairment." Plaintiff wrote that he "can not stand long periods at a time, my balance is off, I have severe back problems[.]" Plaintiff said that he is mentally frustrated, and he has lost weight from 230 to 170 pounds due to stress. (Plaintiff said at the hearing in February 2018 that he was 6'4" and then weighed 260, down from 280-90. Tr. 36). Plaintiff expressed frustration that is no longer able to work to provide for himself or his two daughters. He says that he has "filed 4 times and denied all 4 times."

The Commissioner's decision appears to be supported by substantial evidence except for one aspect, whether Plaintiff needs to use a cane and what effect that has on his ability to perform the jobs listed by the VE. The ALJ wrote that "the record shows that he can ambulate without need of assistive device (Exhibit 9F/49, 62)." Tr. 14. The ALJ's decision also accorded great weight to the opinion of Dr. Anigbogu, who completed a form and checked "no" when asked, "Does the individual require the use of a cane to ambulate?"

He wrote beside the box, "9F/49 Ambulates without AD." The next question asked how far Plaintiff could walk without the use of a cane. Dr. Anigbogu did not list a distance. He simply wrote 9F/62. Tr. 666.

The exhibits 9F/49 and 62 are notes from when Plaintiff was in the hospital for surgery. Exhibit 9F, page 49 (Tr. 507 in the court record) is a page of notes taken on December 27, 2016, the day before Plaintiff had surgery. It described his recent history of trouble walking at work and his complaints of an unsteady gait. One line states, "Pt presents ambulating down hallway without AD." It added, "Pt unsteady and circumduction gait pattern." (Circumduction gait is when the leg is stiff, without flexion at knee and ankle, and each step is rotated away from the body, then towards it, forming a semicircle.) The cited page 62 of the records contains a physical therapist's plan of care, also written on December 27, 2016. It states that Plaintiff was trained on a rolling walker to take home after surgery. His long term goal, targeted after six therapy visits, was listed as "Pt will be independent with ambulation for 300 feet to be able to ambulate community distances." Plaintiff underwent surgery on December 28, 2016. There is nothing in the cited pages that indicates Plaintiff could walk without a cane after his surgery.

Other post-surgery records indicate that Plaintiff was using a cane. On January 4, 2017, Plaintiff saw a physical therapist, and he was using a single-point cane to assist his walking. Tr. 561-63. A February 3, 2017 progress note shows that Plaintiff reported that he "has improved a lot over the past weeks since his surgery," but he was still using a cane for ambulation. Tr. 573. Plaintiff was noted to be using a cane at a number of post-surgery visits, and he sometimes expressed a desire to reduce dependence on an assistive device.

Tr. 562, 573, 585, 602, & 617. Dr. Nanda saw Plaintiff in May 2017 and noted that he was still using a cane. Tr. 637. Plaintiff testified at the hearing that the surgery did no good, and he was by then in even worse condition. He said multiple times that he requires a walker for balance. He said he uses a "walker and a cane," even at home. Tr. 41, 44, 50-56.

The two pre-surgery pages cited by Dr. Anigbogu and the ALJ do not provide substantial evidence to discount the considerable evidence that Plaintiff required a cane to walk in the months after the surgery and through the date of the hearing. Plaintiff was, when he entered the hospital, only beginning to experience symptoms of his spinal condition that he thought might be due to new boots, so it is to be expected that he would not then be on a cane. Records from that brief moment are of little weight in assessing Plaintiff's ability to walk without an assistive device after the surgery and therapy. The record suggests that, despite surgery and therapy, Plaintiff's ability to walk did not improve and perhaps continued to deteriorate. There may be a basis in the record to discount the evidence that Plaintiff required a cane, but the cited pages do not suffice.

The VE was asked about the effect on the three identified jobs if the claimant required a walker, and he said that would eliminate all of them. The VE was not asked about the effect of a cane. It is reasonable to believe that if a walker would eliminate all three jobs, then a cane may have a similar impact. Perhaps not, but that cannot be determined from the current record. Testimony from a VE may provide substantial evidence at step five, but reliance on the VE's testimony here does not do so given the lack of evidence cited to discount the need for a cane and the absence of a question to the VE

about the effect of a cane requirement. These circumstances require reversal pursuant to sentence four of 42 U.S.C. § 405(g) and remand for further proceedings that will allow further exploration and discussion of Plaintiff's need for a cane to walk and its impact on his ability to work.

**New Evidence; Dr. Burton's Letter**

Plaintiff submitted with his brief an October 31, 2019 letter from neurologist Erik Burton, MD. Dr. Burton wrote that he has been seeing Plaintiff since November 2017 for spastic paraparesis due to spinal cord injury/cervical myelopathy." He stated that Plaintiff "is unlikely to see further neurologic recovery or improvement and currently has severe spasticity on multiple medications, constipation, and balance/gait problems requiring a walker for distance and a cane at home." Doc. 11-1.

Plaintiff did not present the agency with the letter from Dr. Burton. The letter is dated October 2019, well after the ALJ denied benefits in November 2018 and the Appeals Council denied review in April 2019. The court's ability with respect to such new evidence is limited to considering whether it warrants remand to the agency. The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (sentence 6).

For new evidence to be material, there must exist the reasonable probability that, if it had been presented to the Commissioner, it would have changed the outcome. Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994). The evidence must also relate to the time

period for which benefits were denied and cannot concern evidence of later-acquired disability or subsequent deterioration of a previously non-disabling condition. Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987).

The letter from Dr. Burton does not specify that it addresses Plaintiff's condition at the time before the Commissioner issued his decision. Dr. Burton may have been referring only to Plaintiff's condition at the time he wrote the letter, or he may have meant that Plaintiff has been in the described condition (including requiring a walker and cane) for the duration of his treatment. It is not clear, so Plaintiff has not met his burden of demonstrating entitlement to remand based solely on this new evidence. But remand is warranted for the reasons discussed above, and the agency will be free on remand to address the letter and perhaps seek clarification or medical records from Dr. Burton that will be relevant to Plaintiff's claim.[1]

Accordingly,

It is recommended that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this claim be remanded to the agency for further proceedings.

---

[1] On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.").

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 24th day of July, 2020.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE